793a. **MOTOR TRANSPORT.**
See 291. Constitutional Law. Sylvania Busses, Inc.
v. Toledo, OS. 6 Abs. 126.

794. **MOTION PICTURES.**
State ex Film Exch. v. Clifton, OS. 6 Abs. 122.

801. **MUNICIPAL LAW.**
See 233. Civil Service. Hile v. Cleveland, OS. 6 Abs.
126.

829. **NEGLIGENCE.**
Zimanski v. Curro & Whittaker Co., OA. 6 Abs. 117.

829—**NEGLIGENCE.**
See 991. Railroads. Penna. Rd. Co. v. Stegaman,
US. 6 Abs. 123.

865. **OFFICE AND OFFICERS.**
See 794. Motion Pictures. State ex Film Exch. v.
Clifton, OS. 6 Abs. 122.

865. **OFFICE AND OFFICERS.**
See 233. Civil Service. Hile v. Cleveland, OS. 6 Abs.
126.

(Continued on Page 127)

# Ohio Supreme Court

## COPELAND v. STATE

Ohio Supreme Court

No. 20829. Decided January 25, 1928.

**First Publication of this Opinion.**

Syllabus by Editorial staff.

295. **CONTINUANCES—1273. Witnesses.**
Circumstances of this case held to warrant Court in
not granting postponement of trial to procure attend-
ance of witnesses.

Error to Montgomery Appeals.

Petition dismissed.

H. E. Kreitzer, Dayton, for Copeland.

Ralph E. Hoshat, Pros. Atty., Dayton, and
Chas. V. Brennan, for State.

FULL TEXT.

BY THE COURT:

Copeland was tried upon an indictment
charging him with the crime of rape, and was
found guilty. The judgment of conviction
was affirmed by the Court of Appeals, that
court finding "that the trial of the case was
free from prejudicial error, and that the ver-
dict is fully sustained by the evidence."

A petition in error was filed in this court
upon the claim that plaintiff in error was de-
prived of constitutional rights in that he was
not permitted "to meet the witness face to
face and to have compulsory process to pro-
cure the attendance of witnesses in his be-
half."

It developed on the trial of the case that
on December 22nd, the day the trial began, a
precipe was filed by counsel for the defend-
ant for a subpoena to issue for "Miss Green,
Juvenile Court," and that the return of the
deputy sheriff showed service by leaving at
the place of residence, but it appeared that
by a previous arrangement made with that
witness, subpoenas for her were left on her
desk in the Juvenile Court building, which ad-
joins the sheriff's office, and that the sub-
poena in question was on said day left upon
her desk under that arrangement.

Mrs. Julia B. Green is an investigator con-
nected with the juvenile court of that county
and the subpoena was intended for her. It
further appears that the subpoena was not
actually received by her or brought to her at-
tention, and that she went to Chicago on that
day for a holiday visit. The end of the case
was reached on the afternoon of December
24th. The record discloses the following:

"The Court: Any other witness? Any-
thing else?

"Mr. Kreitzer; I am not going to rest with-
out Mrs. Green.

"The Court; I telephoned her and she said
she would not testify what you say she said.

"Mr. Kreitzer: I object to that remark.

"The Court: That is made in view of your
statement 'you won't go ahead without Mrs.
Green' and I am telling you what she said,
she would not testify to what you say she
will."

The record then discloses a further state-
ment made by the court in a conversation
with counsel, not in the presence of the jury,
in which the trial judge stated that he had
reached Mrs. Green by telephone, who after
stating that the subpoena had not come to her
attention, and then being informed as to what
it had been stated she would testify were she
present, replied that she could not have testi-
fied as to the general reputation of the prose-
cuting witness for truth and veracity. The
court stated that in view of previous contin-
uances of the trial upon request of the de-
fendant, he would not further postpone the
hearing. The record then discloses that,
"Thereupon the defendant rested his case."

A hearing upon the motion for a new trial,
which is part of the record, shows that the
court was warranted in not granting a post-
ponement of the trial to procure the atten-
dance of the witness, Green. The court par-
ticularly instructed the jury with reference
to the matter in question, and directed that
they must determine the guilt or innocence of
the defendant from the evidence placed before
them and that only the testimony before them
could be considered.

The record presents no debatable constitu-
tional question. The motion to dismiss is
therefore sustained.

(Marshall, CJ., Day, Allen, Kinkade, Jones
and Matthias, JJ., concur.)

## STATE ex MIDWEST. FILM EXCH. v.

### CLIFTON DIR. of ED. and ex. OFF.

### CENSOR of FILMS.

### MANTELL v. DEPT. OF ED.

No. 20886 and 20904. Decided January 25,
1928.

**First Publication of this Opinion.**

Syllabus by Editorial Staff.

794. **MOTION PICTURES—865. Office and Officers.**
Refusal of director of Education to accept film for
censorship based upon "general knowledge" of film and

title, and not upon examination, held unlawful and unreasonable.

In Mandamus.
Writ allowed.

On petition for review,

Order reversed and cause remanded.

Stuart R. Bolin and Sheck, Stephens & Hargreaves, Columbus, for Midwestern Film Exchange.

Matthew L. Bigger, Max M. Matusoff and Edward T. Powell, Columbus, for Frank Mantell, Plaintiff.

Edward C. Turner, attorney general and C. F. Laylin, Columbus, for defendants.

BY THE COURT:

These two cases were filed in this court and are similar in character, both seeking the same ultimate relief. The former is styled an action in mandamus, the latter a petition for review under Section 871-53, General Code. In both cases an effort is made to review an order of the department of education refusing to censor a film, called the Dempsey vs. Tunney Boxing Exhibition held at Chicago, Illinois, September 22, 1927;" and in each case the director of education has filed an answer containing substantially similar defenses.

The pleadings on file in the mandamus proceeding admit that due application for censorship were made, that no examination of the film was made, and that the director of education, as censor ex officio, refused to accept the films for censoring, "basing his judgment and decision on the statutes applicable to this censoring of pictures." It is alleged, and not disputed that the films submitted for censorsing were made in this state, as were the negatives therefrom; that these prints and negatives were never transported into this state by mail, express or common carrier, and that such films, or copies thereof, if approved, were for use solely within the state of Ohio. Substantially similar averments are contained in the petition for review filed by Mantell.

In addition to the admissions made by the director of education, contained in his several answers, he alleges the following as a ground for refusing to accept said films for censorship, viz: that by reason of the title of such film and of his own general knowledge of the event portrayed "it was and is unnecessary for him to actually examine said film in order to exercise his judgment and discretion to determine whether or not such film was of a moral, educational or amusing and harmless character so as to entitle it" to his approval, and that, in his judgment, obtained from his general knowledge, and evidence adduced, the film was neither moral, educational nor of an amusing and harmless character. We rest our decision upon the application of our own statutes to the duties and obligations of the board of censors with respect to the censorship of picture films tendered to it for approval.

By virtue of the provisions of Section 154-46, General Code, there have been conferred upon the Department of Education all the powers and duties theretofore vested in the Industrial Commission of Ohio and the Board of Censors of Motion Picture Films by Sections 871-48 to 871-53, General Code. By the provisions of Section 154-47, General Code, there has been created an advisory board of film censorship, whose duties are specifically described therein. That section reads; "An advisory board of three members is hereby created in the department of education, to be known as the advisory board of film censorship. * * * Such board shall assist and advise the department of education in the examination and censorship of motion picture films."

It is conceded that the director of education not only failed to procure the advice and assistance of this board, but predicated his refusal on the application for exhibition, not upon an examination of the film, but upon what he terms "his general knowledge" of its character. In so doing there was a noncompliance with the statute which requires the approval or disapproval of the film to be based upon its examination.

Section 871-48, General Code, provides: "It shall be the duty of the board of censors to examine and censor as herein provided, all motion picture films to be publicly exhibited and displayed in the state of Ohio."

The following section, Section 871-49, General Code, reads:

"Only such films as are in the judgment and discretion of the board of censors of a moral, educational or amusing and harmless character shall be passed and approved by the board. When a film has been censored by the board of censors a certificate showing the approval or rejection of such film shall be issued to the party submitting the film."

It is manifest that these sections of the law, governing film censorship, were not complied with. While the court would not disturb the exercise of a sound discretion upon the part of the board, in its approval or disapproval of a film, yet the order of the director basing his disapproval upon what he terms his "general knowledge" of the film and its title, and not upon examination, was not made in compliance with the aforesaid sections of our law relating to film censorship.

It therefore follows that the order of the director, made under such circumstances was unlawful and unreasonable, and the cause is accordingly remanded to the department of education for further proceedings conformable to the laws of the state.